

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00464-CV

BOBBY DUNCAN                                                      APPELLANT

V.

FIRST TEXAS HOMES AND FIRST                                      APPELLEES
TEXAS HOMES, INC.

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 141-237976-09

----------

## OPINION

----------

Appellant Bobby Duncan sued Appellees First Texas Homes and First Texas Homes, Inc. (collectively, First Texas) for injuries suffered by Duncan during the course and scope of his employment with First Texas. In three issues, Duncan appeals from the trial court's order granting summary judgment in favor of First Texas. We reverse and remand.

# I. Background

Duncan was employed as a construction superintendent by First Texas. On June 8, 2007, he was injured when he fell down a set of exterior stairs while leaving an office trailer on a construction site located in Frisco, Texas. The U.S. Department of Labor Occupational Safety and Health Administration (OSHA) inspected the construction site in September 2007. On December 3, 2007, OSHA issued a "Citation and Notification of Penalty" to First Texas for several violations of the Occupational Safety and Health Act. Among the citations was a citation for a violation of 29 C.F.R. § 1926.1052(a)(4) because "the swing of the job trailer's door reduced the effective width of the platform [at the top of the stairs] to 14 inches." 29 C.F.R. § 1926.1052(a)(4) (2007) ("Where doors or gates open directly on a stairway, a platform shall be provided, and the swing of the door shall not reduce the effective width of the platform to less than 20 inches (51 cm).").

The stairs and platform were constructed in March 2005. From that time until the accident—a period of two years and three months—Duncan went up and down the steps at least four times per day, five days a week without any problems. When leaving the trailer, Duncan normally turned around and closed and locked the trailer door—which swung outward over the platform—before walking across the platform and down the stairs. This left Duncan with the entire forty-nine-and-a-half-inch width of platform to walk on. On the day of the accident, however, Duncan exited the trailer while simultaneously closing the

2

door behind him. This method left him with only fourteen inches between the swing of the door and the edge of the platform to walk on. Duncan claims that as a result of the insufficient clearance between the swing of the door and the edge of the platform, he inadvertently stepped off the platform "into air" where he expected to find the edge of the platform and fell, striking his lower back on the edge of the platform and first step. After the fall, Duncan was diagnosed with a herniated disc and "posterior displacement and effacement of the cervical spinal cord," which he alleged necessitated epidural steroid injections, physical therapy, and multiple spinal surgeries.

Duncan sued First Texas, alleging that it was negligent in failing to (1) provide Duncan with a safe place to work; (2) engage competent and experienced planners, designers, construction personnel, subcontractors, inspectors, and supervisors; (3) adequately train and instruct the planners, designers, construction personnel, subcontractors, inspectors, and supervisors involved in the construction, inspection, and maintenance of the deck, handrails, and stairway of the office trailer; and (4) inspect the deck, handrails, and stairway of the office trailer and maintain them in a reasonably safe condition.

First Texas filed a hybrid traditional and no-evidence motion for summary judgment. *See* Tex. R. Civ. P. 166a(c), (i). First Texas sought a traditional summary judgment on the grounds that there was no genuine issue of material fact that (1) it did not have actual or constructive knowledge that the stairs constituted a dangerous condition, (2) the stairs did not pose an unreasonable

3

risk of harm, or (3) its alleged failure to exercise reasonable care was not the proximate cause of Duncan's injuries. First Texas also requested summary judgment on the grounds that there was no evidence that (1) it had actual or constructive knowledge of any defect in the stairs prior to Duncan's accident or that the stairs constituted a dangerous condition, (2) a condition on the premises posed an unreasonable risk of harm, or (3) its failure to use reasonable care was the proximate cause of Duncan's injuries.[1] Duncan filed a response, arguing that First Texas failed to prove it was entitled to judgment as a matter of law and that he had provided more than a scintilla of evidence of every element of his claim. The trial court granted First Texas's motion for summary judgment without specifying the grounds relied upon for its ruling.

## II. Standards of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*

---

[1]In its motion, First Texas moved for summary judgment on Duncan's premises liability claim and, in the alternative, Duncan's ordinary negligence claim if the trial court determined that Duncan pled such a claim. In both the trial court and on appeal, Duncan describes his case as a "negligence action against an employer based on premises liability" and only challenges First Texas's motion on his premises liability claim. We also construe Duncan's claim as a premises liability claim.

4

*Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if

reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

Because the trial court's summary judgment order does not state the bases for the trial court's decision, we must affirm the order if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### III. Analysis

### A. Duty to Warn

In his second and third issues respectively, Duncan argues that there was a genuine issue of material fact as to whether he had actual knowledge of the dangerous condition posed by the platform and that even if Duncan had actual knowledge, the trial court erred by concluding that his knowledge relieved First Texas of its duty to warn of or make safe the condition.

First Texas is a nonsubscriber to the Texas Workers' Compensation Act. *See* Tex. Lab. Code Ann. § 406.002(a) (West 2006) ("Except for public

6

employers and as otherwise provided by law, an employer may elect to obtain workers' compensation insurance coverage."). In an action against an employer by an employee who is not covered by workers' compensation insurance, the employee "must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment." *Id.* § 406.033(d) (West Supp. 2014); *see id.* § 406.002(a); *Kroger Co. v. Keng*, 23 S.W.3d 347, 352 (Tex. 2000).

The first step in evaluating Duncan's claim is determining the nature and scope of First Texas's duty. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008) ("Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty."). In a premises liability case, "the scope of the duty turns on the plaintiff's status." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). Here, the parties do not dispute that Duncan, as First Texas's employee, was an invitee when the incident in question occurred. *See Barton v. Whataburger, Inc.*, 276 S.W.3d 456, 466 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("Employees are the invitees of their employer."). An employer's duty to his employees is identical "in all material respects" to a landowner's duty "to use reasonable care to make his premises reasonably safe for the use of his invitees." *Sears, Roebuck, & Co. v. Robinson*, 154 Tex. 336, 340, 280 S.W.2d 238, 240 (1955); *see Leal v. McDonald's Corp.*, No. 03-05-00500-CV, 2009 WL 2410853, at *4 (Tex. App.—Austin Aug. 5, 2009, no pet.) (mem. op.) ("Employers owe their employees the same duty of care that

7

premises owners owe invitees." (citing *Allen v. Connolly*, 158 S.W.3d 61, 65–66 (Tex. App.—Houston [14th Dist.] 2005, no pet.))); *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 644 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (applying elements of a premises liability claim to a nonsubscriber case).

In the employment context, we first evaluate the employer's duty to provide a safe workplace in assessing a plaintiff's claim. *See Del Lago*, 307 S.W.3d at 767; *Barton*, 276 S.W.3d at 461. An employer owes a continuous, nondelegable duty to provide its employees with a safe place to work. *See, e.g.*, *Elwood*, 197 S.W.3d at 794; *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). But an employer is not an insurer of its employee's safety. *Elwood*, 197 S.W.3d at 794. It has no duty to warn an employee of dangers that are commonly known or already appreciated by him unless there is evidence that the work is unusually precarious. *See, e.g., id.* at 794–95 (holding that nonsubscribing employer had no duty to warn employee that placing his hand in the doorjamb of a customer's car is an obvious danger); *see also Jack in the Box, Inc. v. Skiles*, 221 S.W.3d 566, 569 (Tex. 2007) (holding that employer had no duty to warn employee that it was obviously dangerous to use a ladder to climb over a lift gate).

First Texas argued in its motion for summary judgment that it owed no duty to warn Duncan about the platform because by virtue of his eleven years' experience as a construction superintendent and his frequent use of the stairs, Duncan understood any risk associated with going up and down the stairs. In response, Duncan asserted that because the "no-duty" doctrine has been

8

abolished in Texas, his knowledge of the dangerous condition of the platform was only relevant to determining comparative negligence, which First Texas cannot use as a defense because it is a nonsubscriber. *See Sears, Roebuck*, 154 Tex. at 339, 280 S.W.2d at 240 (stating that the "no-duty" doctrine provides that a landowner owes no duty to remedy known and obvious dangers on a premises); *see also Del Lago*, 307 S.W.3d at 772–73 (recognizing that Texas has abolished the "no-duty" doctrine previously applicable to open and obvious dangers known to the invitee and that a plaintiff's knowledge is relevant to determine comparative negligence but does not operate as a complete bar to recovery as a matter of law by relieving the defendant of his duty to reduce or eliminate the unreasonable risk of harm); *Keng*, 23 S.W.3d at 350–51 (rejecting comparative responsibility as a defense to a nonsubscribing employer). The U.S. Court of Appeals for the Fifth Circuit has recently recognized that the nature and scope of a nonsubscribing employer's duty to its employee in a premises liability case is unclear and certified the following question to the Texas Supreme Court:

> Pursuant to Texas law, including § 406.033(a)(1)–(3) of the Texas Labor Code, can an employee recover against a non-subscribing employer for an injury caused by a premises defect of which he was fully aware but that his job duties required him to remedy? Put differently, does the employee's awareness of the defect eliminate the employer's duty to maintain a safe workplace?

*Austin v. Kroger Tex. L.P.*, 746 F.3d 191, 204 (5th Cir. 2014). The Texas Supreme Court has yet to answer, or decline to answer, that question. *See* Tex. R. App. P. 58.1.

9

But assuming without deciding that an employee's awareness of a defect does eliminate an employer's duty to provide a safe workplace, First Texas failed to establish as a matter of law that Duncan knew of or appreciated the risk of harm created by the insufficient clearance between the swing of the door and the edge of the platform. Even though Duncan testified in his deposition that over the course of two years and three months, he went up and down the steps at least four times per day, five days a week without any problems, First Texas failed to put forth any evidence establishing that Duncan knew about the hazard created by the platform. In fact, Duncan testified that he did not observe any problems with the stairs before his accident and that he seldom left the trailer in the manner in which he left the trailer on the day of the accident. First Texas also failed to put forth any evidence to establish that Duncan appreciated the risks associated with the platform as a result of his experience as a construction superintendent.

We conclude that First Texas failed show there was no genuine issue as to whether Duncan knew of or appreciated the hazard created by the platform. Accordingly, we sustain his second issue. Because we have sustained Duncan's second issue, we need not address his third issue. *See* Tex. R. App. P. 47.1.

**B. Premises Liability**

By his first issue, Duncan argues that the trial court erred in granting First Texas's motion for summary judgment because he presented evidence creating a genuine issue of material fact on every element of his premises liability claim.

Here, First Texas owed Duncan a duty to exercise reasonable care to protect him from conditions on the property that created an unreasonable risk of harm of which First Texas knew or should have known by the exercise of reasonable care. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000); *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 219 (Tex. 1999). To prevail on his claim against First Texas, Duncan must establish each of the following four elements: (1) First Texas had actual or constructive knowledge of some condition on its premises, (2) the condition posed an unreasonable risk of harm, (3) First Texas did not exercise reasonable care to reduce or eliminate the risk, and (4) First Texas's failure to use reasonable care proximately caused Duncan's injuries. *See Hall*, 177 S.W.3d at 644. By its motion for summary judgment, First Texas challenged the first, second, and fourth elements of Duncan's premises liability claim. Accordingly, we address each challenged element in turn.

**1. Knowledge of the condition**

The threshold issue in a premises defect claim is whether the defendant had actual or constructive knowledge of the allegedly dangerous condition. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). Actual knowledge is

11

what a person actually knows as distinguished from constructive or imputed knowledge—what a person after a reasonable inspection ought to know or have reason to know. *Id.* at 3–4. A premises liability plaintiff satisfies the notice element by establishing that (1) the premises owner created the allegedly dangerous condition; (2) the owner actually knew that the allegedly dangerous condition existed; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

Actual knowledge "requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008). Circumstantial evidence establishes actual knowledge only when it directly or by reasonable inference supports that conclusion. *Id.* at 415 (citing *State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex. 2002)). When determining if a premises owner has actual knowledge of a condition that presents an unreasonable risk of harm, courts generally consider whether the owner had received reports of prior injuries or reports of the potential danger presented by the condition. *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007)).

In its motion, First Texas asserted that there was no evidence that it had actual or constructive knowledge of the alleged defect. In response, Duncan argued that there was a genuine issue of material fact regarding whether First Texas had both actual and constructive knowledge of the dangerous condition. Duncan attached to his response excerpts from the deposition of Robert Hernandez, who was an area manager for First Texas at the time of Duncan's accident. Hernandez testified that he had difficultly entering and exiting the trailer using the steps, handrails, and landing and that he was afraid he "was going to miss a step or maybe take a tumble." Hernandez was also concerned that the platform was dangerous because there was not enough room on the platform to safely maneuver while opening and closing the trailer door. He further testified that he reported these concerns to Bill Durham, the director of construction for First Texas.[2] When Hernandez reported his concerns, he was told that as long as the stairs and landing were in compliance, First Texas was not going to modify them.

On appeal, First Texas contends that Hernandez's testimony is insufficient to raise a fact issue on First Texas's actual knowledge of the condition because Hernandez could not specifically recall whether he reported the condition to Durham before or after Duncan's accident and because there was no evidence that Hernandez took any additional steps to alter the stairs or the landing after he

---

[2]According to Hernandez, Durham's position was "probably" one of the top four positions at First Texas.

13

reported his concerns. When asked whether he reported his concerns about the platform to Durham before or after Duncan was injured, Hernandez responded, "I think it's before, as far as I can remember." In light of our obligation to examine the record in a light most favorable to the nonmovant, we conclude that Hernandez's testimony raises a fact issue as to whether First Texas had actual knowledge of the condition because both Durham and Hernandez had knowledge of the dangerous condition created by the platform. *See Wal-Mart Stores, Inc. v. Chavez*, 81 S.W.3d 862, 864 (Tex. App.—San Antonio 2002, no pet.) (stating that when defendant's employee learns of a dangerous condition, defendant has actual knowledge of the dangerous condition); *Wright v. Wal-Mart Stores, Inc.*, 73 S.W.3d 552, 554 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that knowledge can be established by "proof that employees either saw or were told of the harmful condition prior to the plaintiff's injury").

First Texas also moved for summary judgment on the ground that it did not have actual or constructive knowledge of the alleged defect as a matter of law because (1) the stairs were constructed by a third party, (2) Duncan inspected and approved the stairs after they were constructed, and (3) Duncan used the stairs for over two years without incident. In support of its motion, First Texas attached portions of Duncan's deposition testimony. Duncan testified that Baltazar Mendez constructed the stairs. According to Duncan, Mendez was "on First Texas's payroll." Duncan further testified that Tony Acosta, another First Texas employee, instructed Mendez where to place the steps and how to build

14

them. Duncan did not know if Mendez submitted a work order or invoice to be paid for his work, but if Mendez did, Duncan would have inspected the work for completion only. At the time of completion, Duncan did not observe any problems with the steps.

Contrary to First Texas's assertions, this evidence does not establish that the stairs were constructed by a third party or that Duncan actually inspected the stairs. According to Duncan, Mendez constructed the stairs under Acosta's direction. Duncan was not certain that he inspected the stairs, and if he did, it was for completion only. The evidence, together with the fact that Duncan used the stairs for an extended period without incident, does not establish as a matter of law First Texas's lack of knowledge of the alleged condition. First Texas offered no other affidavit testimony, deposition testimony, or other evidence to conclusively establish that it did not have actual knowledge. Accordingly, we hold that First Texas's summary judgment evidence did not conclusively negate that it had actual knowledge of the condition.

### 2. Condition posed an unreasonable risk of harm

A condition is not unreasonably dangerous simply because it is not foolproof. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006). A condition is unreasonably dangerous if it presents an unreasonable risk of harm. *Brinson Ford*, 228 S.W.3d at 163. "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen

15

it or some similar event as likely to happen.'" *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)); *see also Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex. 1975) ("Whether a condition constitutes a danger is a function of reasonableness. That is, if the ordinarily prudent man could foresee that harm was a likely result of a condition, then it is a danger."). Foreseeability in this context "does not require that the exact sequence of events that produced an injury be foreseeable." *Cnty. Of Cameron*, 80 S.W.3d at 556. Instead, only the general damage must be foreseeable. *Id.* Because this definition precludes a definitive, objective test, the extent to which a condition is unreasonably dangerous is ordinarily a fact question. *Christus Health Se. Tex. v. Wilson*, 305 S.W.3d 392, 397 (Tex. App.—Eastland 2010, no pet.); *see also Hall*, 177 S.W.3d at 646 ("The determination of whether a particular condition poses an unreasonable risk of harm is generally fact specific."); *Brooks v. First Assembly of God Church*, 86 S.W.3d 793, 797 (Tex. App.—Waco 2002, no pet.) ("Whether a particular risk is unreasonable or not is a fact question for the jury."). When assessing whether a condition posed an unreasonable risk of harm—whether a harmful event was probable and foreseeable—courts have considered, among other things, (1) whether the condition met applicable safety standards and (2) whether any other invitees had complained about the condition. *Martin v. Chick-Fil-A*, No. 14-13-00025-CV, 2014 WL 465851, at *3–4 (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (mem. op.); *see also Brinson Ford*, 228 S.W.3d at

16

163 (holding that pedestrian ramp was not unreasonably dangerous as a matter of law because, among other things, it met applicable safety standards and the premises owner had not received any complaints about the ramp's safety); *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767–68 (Tex. App.—San Antonio 2011, no pet.) (holding that summary judgment was proper because there was no evidence of unreasonable risk of harm where condition—depressions in sidewalk—had been present with for eighteen years with no prior falls or complaints).

Here, it is undisputed that the swing of the trailer's door reduced the effective width of the platform to fourteen inches. In its motion, First Texas argued there was no evidence that a condition on the premises posed an unreasonable risk of harm. In response, Duncan asserted that the platform was unreasonably dangerous because it was six inches shorter than required by 29 C.F.R. § 1926.1052(a)(4) and First Texas's safety guidelines.

Section 1926.1052(a)(4) requires as follows: "Where doors or gates open directly on a stairway, a platform shall be provided, and the swing of the door shall not reduce the effective width of the platform to less than 20 inches (51 cm)." 29 C.F.R. § 1926.1052(a)(4). Similarly, First Texas's safety standards for construction trailers and offices, which Duncan attached to his response, requires that "[t]he landing platform must be at least 30 inches in the direction of travel and the outward swing of the door must not reduce the effective width of the platform to less than 20 inches." Because the platform failed to provide the

17

required clearance between the edge of the platform and the edge of the trailer door as prescribed by OSHA standards and First Texas's safety standards, Duncan argued that it posed an unreasonable risk of harm because it increased the danger of a person falling off the platform.

First Texas asserts that (1) section 1926.1052(a)(4) did not apply to the worksite where Duncan was injured because the construction project was not federally funded and (2) the International Residential Code (IRC) was the applicable standard for construction of stairs and landings used on construction trailers in Frisco, Texas. In support of its contention that section 1926.1052(a)(4) did not apply to the worksite because the construction project was not federally funded, First Texas quotes the following language from *Cole v. Noble Drilling Corp.*,

> [t]he OSHA regulations cited by Plaintiff, 29 CFR § 1926.1052(c)(5), (8)-(9), and (11), are found in Part 1926, "Safety and Health Regulations for Construction," Subpart X, "Stairways and Ladders," of Title 29 of the Code of Federal Regulations (CFR). Authority for these regulations derives, in part, from the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 3701, *et seq.*, which applies to federal service contracts and federal and federally-assisted construction contracts over $100,000. *See* 40 U.S.C. § 3701(b). Assuming that Plaintiff was an employee of Defendant, Plaintiff has presented no valid argument or evidence that the OSHA regulations he cites are applicable in this case, and thus, Plaintiff has not established that these regulations establish the standard of care owed Plaintiff.

No. CIV 1:05CV479HSO-JMR, 2007 WL 2475944, at *4 (S.D. Miss. Aug. 28, 2007). The court in *Cole*, however, did not limit the applicability of section 1926.1052 to federally funded construction projects. *See id.* The court merely

18

pointed out in dicta that authority for part 1926 "derives, in part, from the Contract Work Hours and Safety Standards Act." *Id.* Authority for part 1926 also derives from 29 U.S.C.A. § 653, the applicability section of the Occupational Safety and Health Act, which provides that "[t]his chapter shall apply with respect to employment performed in a workplace in a State." 29 U.S.C.A § 653(a) (West 2008). Section 653(b)(1) clarifies the workplaces to which the act does not apply, but it does not exclude construction projects that are not federally funded. *See id.* § 653(b)(1) ("Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 2021 of Title 42, exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."). The regulations promulgated pursuant to the act, which includes section 1926.1052, incorporate the broad applicability of part 1926: "The standards contained in [part 1926] shall apply with respect to employments performed in a State." 29 C.F.R. § 1926.20(c) (2014). Thus, we conclude that section 1926.1052 applied to the worksite where Duncan was injured.

First Texas next argues that even if section 1926.1052(a)(4) applies to this case, deviations from the standard set forth therein are no evidence that a condition posed an unreasonable risk of harm. *See Richard v. Cornerstone Constructors, Inc.*, 921 S.W.2d 465, 468 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (op. on reh'g) ("A state's common law duties are not expanded by OSHA regulations."); *McDaniel v. Cont'l Apartments Joint Venture*, 887 S.W.2d

19

167, 172 (Tex. App—Dallas 1994, writ denied) (op. on reh'g) ("We hold that any violation of the city ordinance relates only to the third element of the premises defect cause of action," i.e., the alleged failure to exercise reasonable care to reduce or eliminate the risk). OSHA standards, however, are generally relevant as the cumulative wisdom of the industry on what is unsafe. *Wal-Mart Stores, Inc. v. Seale*, 904 S.W.2d 718, 720 (Tex. App.—San Antonio 1995, no writ). Because whether a condition met applicable safety standards is a relevant consideration when determining whether that condition posed an unreasonable risk of harm, we conclude that deviations from the standards prescribed in section 1926.1052(a)(4) are some evidence that the condition in this case posed an unreasonable risk of harm.

First Texas also argues that the IRC supplies the applicable standards for the construction of landings and steps on construction trailers in Frisco, Texas. First Texas points to the affidavit of Steve Covington, the Chief Building Officer for the City of Frisco, Texas. Covington averred that he issued permits for the trailer to First Texas and that with respect to the landing and steps attached to the trailer, inspectors would apply the regulations pertaining to stairways and landings found in the IRC. He further averred that "if any construction company, subcontractor, or any other person . . . inquired on the regulations in building a landing or steps to a construction trailer to be used within the City of Frisco, our office would instruct them to build it in compliance with the 2006 [IRC]." He went on to declare that section 311.5 of the IRC, provides that "[e]very landing [for a

20

stairway] shall have a minimum dimension of 36 inches (914 mm) measured in the direction of travel." Because the landing in this case exceeded the minimum dimensions required by the IRC, First Texas argues that there was no unreasonably dangerous condition as a matter of law.

First Texas did not put forward any evidence to establish that the IRC applied to the exclusion of section 1926.1052(a)(4) or its own safety standards. Moreover, Jim Drebelbis, Duncan's expert, testified that the platform did not meet the standards under the IRC. According to Drebelbis, the IRC mandate that "[d]oors in the fully open position shall not reduce a required dimension by more than seven inches" required the platform to have a thirty-seven-inch clearance between the swing of the door and the edge of the platform, which would render the fourteen-inch clearance in this case insufficient under the IRC.

First Texas does not dispute that the platform did not comply with section 1926.1052(a)(4) or with its own safety standards. Additionally, Drebelbis testified in his deposition that section 1926.1052(a)(4) applied to the platform and that the platform did not comply with section 1926.1052(a)(4) because it was too short. *Cf. Lyondell Petrochemical Co. v. Fluor Daniel, Inc.*, 888 S.W.2d 547, 555 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (concluding that expert testimony regarding OSHA standards and their application is both relevant and admissible in owner's action against contractor for contribution in connection with underlying personal injury action by contractor's employee). This evidence, coupled with

21

Drebelbis's testimony regarding the IRC, was sufficient to raise a genuine issue of material fact as to whether the condition was unreasonably dangerous.

First Texas also moved for summary judgment on the grounds that the stairs did not pose an unreasonable risk of harm as a matter of law because there were no incidents with the stairs from the time they were installed to the time of Duncan's accident and there were no visible problems with the stairs. While evidence of other injuries attributable to the same condition "would be probative," such evidence would not be "conclusive" on the issue of whether the condition posed an unreasonable risk of harm. *Hall*, 177 S.W.3d at 646 (quoting *Seideneck*, 451 S.W.2d at 754). "Likewise, although evidence of the lack of any injuries attributable to the condition might be probative on the issue, it does not follow that such evidence conclusively establishes the absence of an unreasonable risk of harm." *Id.*

Taking the proof favorable to Duncan detailed above as true, and indulging every reasonable inference and resolving any doubts in favor of Duncan, as we must, we conclude that First Texas did not establish as a matter of law that the platform was not unreasonably dangerous. Accordingly, we hold that First Texas's summary judgment evidence did not conclusively negate that the platform was unreasonably dangerous.

### 3. Proximate cause

To prove an action for premises defect, an invitee must establish that the defendant's lack of care proximately caused the invitee's injuries. *CMH Homes*,

22

15 S.W.3d at 99; *Hall*, 177 S.W.3d at 647. Proximate cause consists of cause-in-fact and foreseeability. *Leitch*, 935 S.W.2d at 118. A defendant's negligence is the cause-in-fact of the plaintiff's injuries if the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Hall*, 177 S.W.3d at 648. Foreseeability "means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549–50 (Tex. 1985). It requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996); *Hall*, 177 S.W.3d at 648.

In its summary judgment motion, First Texas asserted that there was no evidence that First Texas's failure to use ordinary care, if any, proximately caused Duncan's injuries. Duncan testified during his deposition that when leaving the trailer, he stepped "into air" where he expected to find the platform and fell onto the edge of the platform and first step, hitting and injuring his lower back. And as discussed above, there was evidence that First Texas constructed the stairs and the platform; that the platform did not meet OSHA, IRC, and First Texas's standards because there was insufficient clearance between the swing of the door and the edge of the platform; and that First Texas knew of the dangerous condition. Accordingly, we conclude Duncan raised a genuine issue of material fact as to whether First Texas's negligence proximately caused Duncan's injuries.

23

First Texas also asserted in its motion that its alleged failure to exercise reasonable care did not, as a matter of law, proximately cause Duncan's injuries because there was no expert testimony linking the alleged defect in the platform to Duncan's injuries. But Drebelbis testified that Duncan would not have fallen if the width of the landing had been in compliance with OSHA standards. Even without Drebelbis's testimony, there was evidence sufficient to raise a genuine issue of material fact regarding causation. While expert testimony under the circumstances might be helpful, it is not required to establish causation. "When a layperson's common understanding and general experience enable her to determine, with reasonable probability, the causal relationship between the event and the condition, proof other than expert testimony will constitute some evidence of causation." *Towers of Town Lake Condo. Ass'n, Inc. v. Rouhani*, 296 S.W.3d 290, 298–99 (Tex. App.—Austin 2009, pet. denied) (citing *Tamez*, 206 S.W.3d at 583; *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex. 1970)). Duncan's testimony regarding his fall, together with evidence that First Texas constructed the stairs and the platform; that the platform did not meet OSHA, IRC, and First Texas's standards because there was insufficient clearance between the swing of the door and the edge of the platform; and that First Texas knew of the dangerous condition, there is some evidence of causation. Thus, First Texas did not establish as a matter of law that its negligence was not the proximate cause of Duncan's injuries.

24

First Texas also moved for summary judgment on the ground that Duncan's negligence was the sole proximate cause of his injuries, arguing on appeal that Duncan's method of using the stairs on the day of the accident resulted in his injuries. Even though a nonsubscribing employer forgoes certain defenses, it is still entitled to the defense that the actions of its employee were the sole proximate cause of the employee's injury. *Najera v. Great Atl. & Pac. Tea Co.*, 146 Tex. 367, 371, 207 S.W.2d 365, 367 (1948) (stating that a finding against injured worker on sole proximate cause issue in a nonsubscriber case would have prevented recovery); *Hall v. Timmons*, 987 S.W.2d 248, 255 (Tex. App.—Beaumont 1999, no pet.) (stating that a nonsubscribing employer may defend on ground that employee was guilty of some act which was the sole proximate cause of her injury); *see also Keng*, 23 S.W.3d at 352 (citing *Brookshire Bros. v. Wagnon*, 979 S.W.2d 343, 347 (Tex. App.—Tyler 1998, pet. denied) (submitting an employee's fault improper unless the submission is on sole proximate cause)).

Sole proximate cause is an inferential rebuttal defense. *Walzier v. Newton Trucking Co.*, 27 S.W.3d 561, 563–64 (Tex. App.—Amarillo 2000, no pet.) (citing *Am. Jet., Inc. v. Leyendecker*, 683 S.W.2d 121, 126 (Tex. App.—San Antonio 1984, no writ)). "The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery." *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978). Specifically, evidence illustrating sole proximate cause does not tend to interject

25

an independent basis for denying recovery for the plaintiff once he establishes a prima facie case. Rather, it tends to disprove an element of the plaintiff's cause of action or the existence of the prima facie case. *Walzier*, 27 S.W.3d at 564; *Timmons*, 987 S.W.2d at 255 (citing *Holiday Hills Ret. & Nursing Ctr., Inc. v. Yeldell*, 686 S.W.2d 770, 775 (Tex. App.—Fort Worth 1985), *rev'd on other grounds*, 701 S.W.2d 243 (Tex. 1985)).

For First Texas to obtain summary judgment on the basis of sole proximate cause, it had to prove as a matter of law that Duncan's own conduct was the only proximate cause of his injury. *See Walzier,* 27 S.W.3d at 563; *cf. Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995) (holding summary judgment proper because the defendant's action was not the proximate cause of the plaintiff's injury as a matter of law), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45–46 (Tex. 2007). To defeat a defendant's claim that the plaintiff was the sole proximate cause of his own injury, "all the plaintiff has to do is show that some negligence of the employer caused his injury." *Timmons*, 987 S.W.2d at 254 (citing *Yeldell*, 686 S.W.2d at 775).

Even though Duncan left the trailer numerous times without incident, First Texas failed to establish that Duncan's actions were the only cause of his injuries. In light of the evidence detailed above, we conclude that there was some evidence to show that First Texas's negligence caused Duncan's injuries. Thus, First Texas failed to establish as a matter of law that Duncan's negligence was the sole proximate cause of his injuries.

26

Accordingly, we sustain Duncan's first issue.

## IV. Conclusion

Having sustained Duncan's first and second issues, we reverse the trial court's summary judgment and remand this case to the trial court for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: GARDNER and WALKER, JJ.[3]

DELIVERED: February 12, 2015

---

[3]Justice McCoy was a member of the original panel but has retired in the interim. This case was decided by the two remaining justices. *See* Tex. R. App. P. 41.1(b).