**REVERSE and RENDER and Opinion Filed July 17, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00961-CV

**THE CITY OF DALLAS, Appellant**
**V.**
**WILLIAM CLINTON FREEMAN, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-00805-C**

## MEMORANDUM OPINION
Before Justices Bridges, Osborne, and Reichek
Opinion by Justice Bridges

Appellee William Clinton Freeman sued the City of Dallas after he was injured while riding a bicycle on a City sidewalk. Freeman alleged he was injured as a result of a hazardous condition that was either a special defect or an ordinary-premises defect. The City filed a plea to the jurisdiction asserting immunity under the Texas Tort Claims Act. The trial court denied the City's plea to the jurisdiction. On appeal, the City argues the trial court erred by denying its plea to the jurisdiction because the three inch elevation change between the sidewalk and the abutting curb, about which Freeman complains, was not a special defect, and the City did not have actual knowledge of the elevation change prior to Freeman's accident. We reverse the trial court's order denying the City's plea to the jurisdiction and dismiss Freeman's claim for want of subject-matter

jurisdiction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

On November 14, 2014, at approximately 12:15 p.m., Freeman was riding his bicycle on the sidewalk on the west side of the 15700 block of Preston Road,[1] just south or Arapaho Road in Dallas. At that time, there was some debris on the sidewalk due to a storm the weekend before. Freeman swerved to avoid the debris and the side of the bicycle's front wheel hit the curb, and he fell into the street. Freeman was taken to the hospital where he was treated for multiple fractures and a concussion.

Freeman filed suit against the City asserting the Texas Tort Claims Act (the "Act") waived the City's immunity from suit for his premises-liability claim. He alleged an elevation difference between the sidewalk and the curb[2] was a special defect and the City failed to exercise ordinary care to protect him from the condition of which it was aware or reasonably should have been aware. Freeman alternatively alleged, if the condition was not a special defect, it was a premises defect and the City had actual knowledge of the complained of condition, and he did not.

The City filed a plea to the jurisdiction and a supplemental plea asserting Freeman could not establish a waiver of governmental immunity under the Act because the condition at issue was not a special defect and the City did not have actual knowledge of the complained of condition, which is required to establish a waiver of immunity for Freeman's premises-defect claim. The City attached to its plea to the jurisdiction: photographs of the location where the accident occurred; the affidavits of Robert Miranda, a Manager in the City's Department of Mobility and

---

[1] Preston Road is a State owned highway. Consequently, the City does not maintain the road itself.

[2] The parties stipulated that the difference between the elevation of the curb and the sidewalk at the location where Freeman fell was three inches.

–2–

Street Services, and Sheila Gray, the City's 3-1-1 Configuration Manager; portions of Freeman's interrogatory responses; and excerpts from the transcripts of Freeman's and Miranda's depositions.

In his affidavit, Miranda averred that he conducted a search of the City's Citizen Request Management System (CRMS), a system that stores calls or complaints for service regarding any hazardous condition that may exist in the City. The search revealed that no work had been performed by the City at the location of Freeman's accident, and that the City had not received any reports or complaints regarding a depressed, unrepaired, uneven, cracked, or sunken sidewalk, an elevated curb, or any other defects or dangerous conditions at the location of the accident for a period of two years prior to Freeman's accident.

In her affidavit, Gray averred that complaints or calls for City services regarding dangerous conditions are received through the 3-1-1 reporting system. The information is entered into the City's CRMS system and is routed to the appropriate department. Gray conducted a search of the CRMS records and found that the City had not received any calls, reports, or complaints of a depressed, unrepaired, uneven, cracked, or sunken sidewalk, an elevated curb, or any other defects or dangerous conditions at the location of Freeman's accident for a period of two years prior to Freeman's accident.

The City also relied on Freeman's deposition testimony and interrogatory responses as further support for its position that the City had no knowledge of the condition of the sidewalk prior to Freeman's accident. Freeman admitted during his deposition that he had no evidence the City had knowledge of any issue with the sidewalk prior to his accident.

In response to the City's plea, Freeman argued that the condition was a special defect and that the City breached the duty it owed to Freeman as an invitee. He alternatively argued that, in the event the condition was an ordinary-premises defect, the City breached the duty owed to Freeman as a licensee. Freeman attached to his response, and supplement thereto: excerpts from

–3–

the transcript of his deposition; photographs of the area where his accident occurred; a copy of the City of Dallas' Sidewalk Replacement Program, setting forth a cost share program with property owners; Freeman's original petition; and the City's responses to discovery requests. Freeman asserted that because the intersection where the incident occurred is one of the busiest intersections in the City and because the City has a sidewalk replacement program, whereby it offers to share the cost of repairs with property owners, there is circumstantial evidence of the City's actual knowledge of the condition of the sidewalk at issue in this case. Freeman also argued that, pursuant to the Dallas City Code, the Director of the Mobility and Street Services Department had police powers regarding roads and sidewalks, including the power to conduct inspections and notify the owner of the abutting property that the sidewalk was in need of repair. Finally, Freeman argued that because the City built the sidewalk, it can be inferred that the City knew the sidewalk had an inadequate foundation and would at some point in time sink.

The trial court held five hearings on the City's plea to the jurisdiction before denying same. This appeal followed.

### STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea in which a party challenges a court's authority to determine the subject matter of the action. *Rawlings v. Gonzalez*, 407 S.W.3d 420, 425 (Tex. App.—Dallas 2013, no pet.). The existence of subject-matter jurisdiction is a question of law; therefore, we review de novo the trial court's ruling on a plea to the jurisdiction. *Id*.

The plaintiff bears the burden to plead facts affirmatively demonstrating governmental immunity has been waived and the court has subject-matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). A governmental entity's plea to the jurisdiction can be based on pleadings or evidence. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we

–4–

consider the relevant evidence submitted by the parties to determine if a fact issue exists. *Id*. at 227.

The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id*. at 228; *City of Dallas v. Prado*, 373 S.W.3d 848, 852 (Tex. App.—Dallas 2012, no pet.). We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Prado*, 373 S.W.3d at 853. The burden is on the City, as movant, to meet the standard of proof. *Id*. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id*. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*.

### GOVERNMENTAL IMMUNITY

Governmental immunity protects political subdivisions of the State, including cities, from lawsuits for money damages unless immunity has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). As relevant here, the Texas Tort Claims Act provides a limited waiver of immunity for claims arising from a condition or use of real property. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). The Act recognizes potential liability for two types of dangerous conditions of real property, premises defects and special defects. *Id.* § 101.022. The Act imposes different standards of care depending on whether the condition is a premise defect or a special defect. *Id.* § 101.022. If a condition is neither a special nor ordinary-premises defect, no duty is owed and there is no waiver of immunity. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

I.      Special Defect

If a claim arises from a special defect, the governmental unit owes the duty that a private

person owes to an invitee. *See* Civ. Prac. & Rem. § 101.022(b). "With respect to an invitee, the City owes a higher duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the City is or reasonably should be aware." *City of Austin v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.).

Whether a condition is a special defect is a question of law that we review de novo. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (per curiam). The Act does not define "special defect," but "likens it to conditions 'such as excavations or obstructions on highways, roads, or streets.'" *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (quoting Texas Tort Claims Act § 101.022(b)). "A condition must therefore be in the same class as an excavation or obstruction on a roadway to constitute a special defect." *Perches*, 388 S.W.3d at 655. In determining whether a particular condition is like an excavation or obstruction, we consider the following: (1) the size of the condition, (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road, (3) whether the condition presents some unusual quality apart from the ordinary course of events, and (4) whether the condition presents an unexpected and unusual danger. *Hayes*, 327 S.W.3d at 116. Most property defects are ordinary-premises defects, not special defects. *Payne*, 838 S.W.2d at 238. The class of special defects contemplated by the statute is narrow. *Perches*, 388 S.W.3d at 655.

In its first issue, the City contends the trial court erred in denying its plea to the jurisdiction as to Freeman's special-defect claim because the three inch elevation change at issue here is not in the same class as an excavation or obstruction on a roadway and, thus, cannot be a special defect. The Texas Supreme Court's decisions in *Paper*, *Reed*, *Bernal*, and *Roberts* and this Court's decision in *Phelps* are instructive on the issue of whether the elevation change in this case is a special defect and aid our analysis. *See City of Denton v. Paper*, 376 S.W.3d 762 (Tex. 2012);

*City of Dallas v. Reed*, 258 S.W.3d 620 (Tex. 2008); *City of El Paso v. Bernal*, 986 S.W.2d 610 (Tex. 1999); *City of Grapevine v. Roberts*, 946 S.W.2d 841 (Tex. 1997); *City of Richardson v. Phelps*, No. 05-18-00753-CV, 2019 WL 2912238 (Tex. App.—Dallas July 8, 2019. No pet. h.) (mem. op.).

In the *Paper* case, a bicyclist was injured when her bicycle's front wheel encountered a depression or sunken area in a roadway a few inches deep where the city had installed a sewer tap. *Paper*, 376 S.W.3d at 763–64. The bicyclist was pitched over the handlebars, landing on her chin and breaking several teeth. *Id.* at 764. In that case, the supreme court concluded that "the sunken area or pot hole here, ranging from two inches to a few inches more at its deepest point and located in the center of one lane of traffic is not the excavation or obstruction contemplated by the statute." *Id.* at 765–66. The sunken area "did not physically impair Paper's ability to travel." *Id.* at 766. And "the sunken area could have been avoided without leaving the roadway or entering the opposing lane." *Id.*

In the *Reed* case, a motorcyclist was injured when he encountered a two-inch elevation variance on the roadway as he changed lanes. *Reed*, 258 S.W.3d at 621. In that case, the supreme court concluded "[n]ot only is the two-inch drop-off here not in the same kind or class as an excavation or obstruction, there is nothing unusually dangerous about a slight drop-off between traffic lanes in the roadway." *Id.* at 622. "Ordinary drivers, in the normal course of driving, should expect these slight variations on the road caused by normal deterioration. Thus, to construe a two-inch drop-off to be within the same kind or class as an excavation or obstruction would 'grossly strain[ ] the definitions of those conditions.'" *Id.* (quoting *Roberts*, 946 S.W.2d at 843)).

In the *Bernal* case, a pedestrian sustained injuries when she tripped on an abraded area of a city sidewalk that was approximately 3 feet by 6 feet in size with a depth of 3 inches, at its lowest point. *Bernal*, 986 S.W.2d at 611. In that case, the supreme court concluded "the sidewalk's

condition was not a special defect." *Id.*

In the *Roberts* case, a pedestrian lost her balance while walking down steps from an elevated sidewalk toward the curb and stepped into a hole in the sidewalk step where the concrete had cracked and crumbled away. *Roberts*, 946 S.W.2d at 842. In that case, the supreme court concluded "[a]s a matter of law, a partially cracked and crumbled sidewalk step is not a defect of the same kind or class as the excavations or obstructions the statute contemplates." *Id.* at 843.

In the *Phelps* case, a bicyclist was injured while traveling in a designated bicycle lane when he encountered a lip or heave in the lane, which ran in the direction in which he was traveling. *Phelps*, 2019 WL 2912238, at \*1. The evidence showed that at the time of Phelps's accident, the left side of the bike lane was approximately two inches higher than the right. *Id.* at \*3. In that case, this Court concluded, as a matter of law, the approximate two-inch elevation change was not a special defect. *Id.*

From these cases it is evident that variations in public roadways and sidewalks of a few inches are not the same as the excavations or obstructions mentioned in the Act. Moreover, the elevation difference in this case only exists where the sidewalk meets the curb and does not extend to any of the traversable part of the sidewalk, and thus, does not physically impair a pedestrian or bicyclist from traveling on the sidewalk itself.[3] *See id.* (essential structure of the steps leading from the sidewalk to street was not impaired). In addition, where, as here, there is ample room for a cyclist to avoid the claimed defect, the defect does not impair ordinary use. *See Paper*, 376 S.W.3d at 766, *see also City of Austin v. Vykoukal*, No. 03-16-00261-CV, 2017 WL 2062259, at \*4 (Tex. App.—Austin May 10, 2017, pet. denied) (mem. op.) (overgrown vegetation in bike lane was not special defect where vegetation could be avoided by cyclists without leaving the lane).

---

[3] The physical evidence shows the sidewalk has settled in the section where Freeman fell and that the sidewalk is nevertheless smooth and unobstructed and the three inch elevation change between the sidewalk and the curb will only be encounter if you attempt to leave the sidewalk and enter the street.

Finally, Freeman concedes that the elevation change was likely caused by deterioration over time, although he contends when the sidewalk was constructed the foundation was inadequate and claims the inadequate foundation put the City on notice that, at some later point in time, the sidewalk would sink. Deterioration over time should be expected and does not transform the condition into a special defect. *See Reed*, 258 S.W.3d at 622; *Hindman v. State Dep't of Highways & Pub. Transp.*, 906 S.W.2d 43, 46 (Tex. App.—Tyler 1994, writ denied) (special defects do not include every pothole or bump encountered on a public highway in Texas capable of upsetting a cyclist).

Having considered the *Hayes* factors and supreme court precedent, we conclude the three inch elevation difference between the sidewalk and the curb at issue in this case is not a special defect. Consequently, the trial court erred in denying the City's plea to the jurisdiction as to Freeman's special-defect claim. We sustain the City's first issue.

II.     Premises Defect

In its second issue, the City contends the trial court erred by denying its plea to the jurisdiction as to Freeman's premises-defect claim. The City maintains it retains immunity from this claim because it lacked actual knowledge of the alleged defect at the time Freeman was injured.

If a claim arises from a premise defect, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." CIV. PRAC. & REM. § 101.022(a). That duty requires the City to not injure a licensee by willful, wanton or grossly negligent conduct; the City must use ordinary care to warn a licensee, or to make reasonably safe a dangerous condition of which the City is aware and the licensee is not. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016). Actual knowledge of the dangerous condition is required. *Id*. at 392 (citing *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974)). Constructive

knowledge of the defect is insufficient.  *See id.*

"Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge, which can be established by facts or inferences that a dangerous condition could develop over time."  *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008); *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006). Awareness of a potential problem is not actual knowledge of an existing danger.  *Reyes v. City of Laredo*, 335 S.W.3d 605, 609 (Tex. 2010).  In determining whether a landowner, such as the City, has actual knowledge of a dangerous condition, "courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition."  *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008); *see also Reed*, 258 S.W.3d at 622–23 (no prior accidents or complaints about road condition contributed to conclusion of no actual knowledge at the time of the motorcycle accident).

To show it lacked actual knowledge of the complained of condition at the time Freeman was injured, the City relied on the deposition testimony and affidavits of City employees.  City employees, Miranda and Gray, established that in the two years prior to Freeman's accident, the City received no reports of any sunken sidewalk, elevated curb, or any other defective or dangerous conditions at the location of the accident.  Moreover, Freeman admitted that he first gave the City notice of the elevation change approximately three months after his accident, he was not aware of anyone else reporting the elevation change to the City, there were no previous accidents resulting from the same condition, and he has no evidence that the City had actual knowledge of the condition prior to his accident.

Freeman concedes that he has no direct evidence of actual knowledge.  Accordingly, he attempts to create a genuine issue of material fact as to whether the City had actual knowledge through what he characterizes is circumstantial evidence.  Actual knowledge of a dangerous

condition can sometimes be proven through circumstantial evidence. *Prado*, 373 S.W.3d at 854 (citing *City of Austin v. Leggett*, 257 S.W.3d 456, 476 (Tex. App.—Austin 2008, pet. denied)). However, circumstantial evidence establishes actual knowledge only when it either directly or by reasonable inference supports that conclusion. *City of Corsicana v. Stewart*, 249 S.W.3d 412, 415 (Tex. 2008) (per curiam).

Freeman claims the City had actual knowledge of the defective condition of the sidewalk because: the intersection near the sidewalk at issue is very busy; the City has a sidewalk replacement program and promotes bicycle riding; the City has an inventory group, consisting of three to four people who inspect roads every other year, and the City's Director of the Mobility and Street Services Department has police powers regarding roads and sidewalks, including the power to conduct inspections and request that the owner of the abutting property reconstruct or repair the sidewalk; and the City built the sidewalk, which Freeman contends was inadequately constructed. As discussed *infra*, none of this evidence raises a fact issue concerning knowledge.

Freeman's contention that actual knowledge can reasonably be inferred from the proximity of his accident to a busy intersection is unavailing. Actual knowledge of the alleged defect is required, not general notice. *State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex. 2002). In addition, the supreme court's decision in *Thompson* refutes Freeman's contention. In that case, the court held an area of Dallas Love Field Airport that was well traveled with passengers and City employees was not evidence of the City's actual knowledge of a protruding metal expansion-joint coverplate. *City of Dallas v. Thompson*, 210 S.W.3d 601, 603–04 (Tex. 2006). Consequently, the proximity of Freeman's accident to the intersection of Preston Road and Arapaho Road is no evidence of actual knowledge on the part of the City.

The fact that the City offers a sidewalk replacement program and promotes bicycle riding does not create a reasonable inference the City had actual knowledge of the complained of

condition at the time of Freeman's accident. The implication of Freeman's argument is that the City knows sidewalks fall into disrepair and require repair. But the mere fact that materials may deteriorate over time and may become dangerous does not itself create a dangerous condition. *Id.* at 603.

In addition, the fact that the City has the authority to inspect sidewalks does not, in and of itself, convey actual knowledge to the City of an alleged defect. Actual knowledge is what a person actually knows as distinguished from constructive or imputed knowledge. *Duncan v. First Tex. Homes*, 464 S.W.3d 8, 16 (Tex. App.—Fort Worth 2015, pet. denied). Constructive or imputed knowledge only applies where the plaintiff is an invitee when he is injured. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 2000). The licensee standard applies to Freeman's premises-defect claim, not the invitee standard. CIV. PRAC. & REM. § 101.022(a).

Freeman contends that because the City built the sidewalk with an inadequate foundation actual knowledge, that at some future point in time, the sidewalk would sink, can be inferred. The *Paper* case proves Freeman's contention wrong. The *Paper* case involved the City of Denton's excavation of a portion of a street that it repacked just one week prior to the plaintiff's bicycle accident caused by the same area sinking. *Paper*, 376 S.W.3d at 764. In that case, the supreme court concluded there was no evidence the City knew the dangerous condition existed after it completed its work in the area. *Id.* at 767. Actual knowledge is not established by knowledge of the mere possibility that a dangerous condition can develop over time. *Id.*

Viewing the evidence in the light most favorable to Freeman, he has not raised a fact question as to the City's actual knowledge of the complained of condition. The City established it is immune from Freeman's premises-defect claim and the trial court erred in ruling otherwise. We sustain the City's second issue.

Freeman urges that this Court should affirm the trial court's denial of the City's plea to the

jurisdiction because reversing the holding is against public policy. It is the province of the Legislature, not the courts, to prescribe the parameters of premise and special-defect claims. *Denton Cty. v. Beynon*, 283 S.W.3d 329, 333 (Tex. 2009). The trade-offs inherent in governmental immunity are a uniquely legislative matter. Accordingly, we decline Freeman's request that we inject ourselves into a legislative role.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Freeman's claims against the City for lack of subject matter jurisdiction.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

180961F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE CITY OF DALLAS, Appellant

No. 05-18-00961-CV          V.

WILLIAM CLINTON FREEMAN,
Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-16-00805-C.
Opinion delivered by Justice Bridges.
Justices Osborne and Reichek participating.

In accordance with this Court's opinion of this date, the trial court's order denying the City of Dallas' plead to the jurisdiction is **REVERSED.**

It is **ORDERED** that William Clinton Freeman's claim against the City of Dallas is **DISMISSED** for want of subject matter jurisdiction.

It is **ORDERED** that appellant THE CITY OF DALLAS recover its costs of this appeal from appellee WILLIAM CLINTON FREEMAN.

Judgment entered this 17th day of July 2019.