

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00201-CV

———————————————

TONYA GAYLE HARKINS, Appellant

V.

WAL-MART STORES TEXAS, LLC, D/B/A WAL-MART STORES TEXAS 2007,
LLC, WAL-MART SUPER CENTER, AND WAL-MART, Appellees

---

On Appeal from County Court at Law
Hood County, Texas
Trial Court No. C08035

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion On Rehearing by Justice Wallach

## MEMORANDUM OPINION ON REHEARING

After this court issued its original memorandum opinion, Appellees filed their Motion for Rehearing. Although we hereby deny the Motion for Rehearing, we withdraw our June 23, 2022 memorandum opinion and substitute this memorandum opinion for the original.

This is a personal injury case arising from Appellant Tonya Gayle Harkins' trip and fall at a Wal-Mart store in Granbury, Texas. Harkins sought to impose liability on Appellees Wal-Mart Stores Texas, LLC, d/b/a Wal-Mart Stores Texas 2007, LLC, Wal-Mart Super Center, and Wal-Mart (collectively Wal-Mart) based on premises liability and negligent activity theories. Wal-Mart filed a hybrid motion for summary judgment in which it sought a traditional summary judgment on the premises liability claim because it did not have notice of any such condition and because the alleged unreasonably dangerous condition was not concealed, thereby negating any duty to Harkins. It argued for a no-evidence summary judgment on that claim on the grounds that there was no evidence of (1) an unreasonable risk of harm; (2) knowledge of an unreasonably dangerous condition; (3) breach of duty; or (4) proximate cause. Further, Wal-Mart contended that there was no evidence that Harkins' fall was caused by a contemporaneous negligent activity, requiring dismissal of Harkins' negligent activity claim.

The trial court granted both motions without specifying the bases of its ruling and Harkins now appeals that order. Because Harkins' own arguments establish that

2

this is a premises defect case, we will affirm that portion of the judgment granting Wal-Mart's no-evidence motion for summary judgment regarding negligent activity. However, we will reverse the remainder of the summary judgment regarding premises liability and remand the case to the trial court for further proceedings because the evidence established the existence of fact issues.

## I.    Background

Harkins alleged that on December 6, 2018, she tripped and fell on a floor mat at the exit of a Wal-Mart store. Harkins filed this personal injury case against Wal-Mart on July 30, 2019, asserting negligent activity and premises liability theories against Wal-Mart. The negligence allegations in the petition were that Wal-Mart:

(a) failed to take proper steps to ensure that the area was safe;

(b) provided or allowed to exist an unreasonably dangerous path on which to walk;

(c) failed to properly inspect the area in question, when it knew or should have known of the unreasonably dangerous condition;

(d) failed to provide a safe common area at the premises;

(e) failed to adequately warn the plaintiff that the dangerous condition existed;

(f) failed to block off or guard the area so as to prevent its invitees from using this area;

(g) failed to timely correct the dangerous condition once it was discovered;

(h) failed to exercise reasonable care, diligence, and prudence so as to protect the safety of persons on the premises.

Wal-Mart answered with a general denial and multiple affirmative defenses, including that the alleged condition was open and obvious and not concealed. Wal-Mart then filed a traditional motion for summary judgment contending that it did not have notice of the alleged unreasonably dangerous condition and that the alleged unreasonably dangerous condition was not concealed, thereby negating any duty to Harkins. This traditional motion was combined with a no-evidence motion for summary judgment in which Wal-Mart contended that there was no evidence: (1) of an unreasonable risk of harm; (2) that it had notice of an unreasonably dangerous condition; (3) of a breach of duty; and (4) of proximate cause of injury (specifically, there was "not sufficient evidence that [Harkins'] fall was proximately caused by any action or inaction on the part of [Wal-Mart]"). Wal-Mart did not contend that there was no evidence of injury. Further, Wal-Mart argued that there was no evidence that Harkins' fall was caused by a contemporaneous activity of any of its employees, requiring dismissal of Harkins' negligence claim.

In support of its traditional motion, Wal-Mart relied upon Harkins' admission that the floor mat was open and obvious. Harkins' response was not that the floor mat itself was unreasonably dangerous but that the floor mat was unreasonably dangerous because it was prone to rolling up when in normal use, thereby causing an unreasonable risk of tripping and falling, and that risk was concealed and that Wal-Mart did not exercise reasonable care to fix it, to warn its patrons, or to protect them against it.

Harkins' evidence in response to Wal-Mart's motions came from deposition excerpts from Lori Bernard, Wal-Mart's customer service manager, and Angela Brown, Wal-Mart's Assistant Manager; a surveillance video recording of the event and screen captures therefrom; Wal-Mart's customer incident report and customer incident video request form related to Harkins' incident; and a print out of Wal-Mart's "Floor Mat Program."

We will begin with the security video. Unlike many cases where events can only be described through the senses and memories of human witnesses, here we have an actual video recording of the events beginning an hour before the fall and ending an hour after it. The video reveals that the area in question is the entrance/exit of the Wal-Mart store. In the foreground is the inside of the store, and in the background is the outside of the store. Also visible in the foreground is a blue equipment station with a water bucket and mopping equipment and a wet-floor sign. In the background, several feet away, are automatic sliding doors on the left and right, each of which has glass appearing doors with horizontal metal bars in them. Each set of doors is split in the middle and open and close by each door moving to and from the middle of the door opening. From 5:25 p.m. to 6:25 p.m., the video shows a high volume of foot traffic with many people entering and leaving through both sets of doors, some pushing grocery carts, others not. At 5:25 p.m., the right-door side (the side in question) has a dark floor mat lying just to the exterior side of the automatic doors while the left side has a similar floor mat in the space between the automatic doors.

5

Between 5:25 p.m. and 6:25 p.m., the automatic doors on the left side never close, remaining continuously in the open position. The door mat on the left side moves very little from its originally viewed position between the doors.

Wal-Mart's greeter, Ronnie, repositioned the mat on the right side at 5:30 p.m. from the exterior side of the automatic doors to a position where the front few inches of the mat were directly between the automatic doors. He did this by simply using his foot to glide the mat across the floor. Between 5:30 p.m. and 5:52 p.m., the pedestrian traffic had slid the right-side mat back to the exterior side of the automatic doors. At 5:52 p.m., Ronnie again slides the mat back between the automatic doors.

Between 5:52 p.m. and 6:12 p.m., the right front portion of the mat rolled up 11 times as the automatic doors closed and rolled back flat each time the doors reopened. The rolled-up portion of the front of the mat extended from the right front corner to approximately a quarter of the way across the front of the mat. While the mat was rolling up and back out, three patrons used a foot to help the mat unroll as the doors opened. No one else appeared to have difficulty with the mat between 5:25 p.m. and 6:25 p.m., but no one appeared to have contacted the front of the mat with the toe of a shoe. Between 6:12 p.m. and 6:25 p.m., the time of the fall, the mat stopped rolling up despite the doors continuing to open and close. Between 5:30 p.m. and 6:30 p.m., Ronnie is seen in the video working in the area frequently but also out of the camera's view for periods of time. When in view, Ronnie was greeting customers, arranging baskets, moving motorized carts, cleaning, and doing other

miscellaneous tasks. However, he did not appear to be paying much direct attention to the floor mat and only moved it twice as described.

At 6:25 p.m., a man approaches the right-side doors, which are closed. They open as he approaches, and he exits without incident. Another person then approaches, pushing a basket, and exits without difficulty. Harkins then approaches. She is walking at a normal speed, but she does not pick her feet up very high as she walks, which one could reasonably describe as "foot dragging." The mat appears to be flat. Her right foot contacts the right front of the mat first. No mat movement is visible. As she moves her left foot forward, the toe of her shoe contacts the area of the mat near where the mat had stopped its rolling when the door had been rolling it up. She did not kick the mat or appear to do anything other than to move her foot forward. When her left shoe's toe contacted the mat, the mat curled back from the point where her toe contacted the mat and rolled up in a diagonal direction such that about one quarter of the left front mat curled up, resulting in Harkins' trip and fall.

The video shows that Harkins took a significant fall. She stayed on the floor for a period of time and was immediately assisted by other patrons. About 30 seconds after her fall and as Harkins was still laying on the mat, Ronnie, who was just a few feet from her, goes to check on her, and rolls the rug back flat using his foot. At 6:30 p.m., an unidentified male walks to the front of the mat and moves his foot into the front of the mat as if he was checking to see how easily the mat would roll up. With what appeared to be little effort, he rolled up the front of the mat with his foot.

From the deposition testimony of the Wal-Mart managers, the following matters relevant to our review are gleaned:

a.      Lori Bernard:

1)      the weather stripping on the bottom of the automatic doors sometimes catches the mats and causes them to roll up when the doors close if the mat is between the doors;

2)      mats that roll up are a tripping hazard if they do not unroll when the doors close;

3)      viewing Harkins' fall on the video, Bernard agreed that Harkins caught the toe of her shoe on the rubber edging of the mat, which caused the mat to flip up as she moved forward, and that the mat did not flip up of its own volition;

4)      it was Ronnie's job to see that the mats were properly placed;

5)      it was Ronnie's job to keep the mat from being between the doors so that the mat would not get rolled up;

b.      Angela Brown:

1)      it was Ronnie's job to "constantly" watch the mats and keep the mats in proper position;

2)      it was known to Brown that people would drag their feet as they walked and "kick up" the corners of the mat.[1]

---

[1]Harkins argued in the trial court, and does so here, that Brown testified on page 41 of her deposition that a curled mat should be replaced. However, there was no page 41 from Brown's deposition attached to the summary judgment response and there is none in the clerk's record. Thus, we cannot consider it in our review. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## II.  Standards of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). No-evidence and traditional grounds for summary judgment may be combined in a single hybrid motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *Coleman v. Prospere*, 510 S.W.3d 516, 518–19 (Tex. App.—Dallas 2014, no pet.). When a trial court grants both a no-evidence and a traditional motion for summary judgment, we first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Duncan v. First Tex. Homes*, 464 S.W.3d 8, 13 (Tex. App.—Fort Worth 2015, pet. denied). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008); *Duncan*, 464 S.W.3d at 13. When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *Duncan*, 464 S.W.3d at 13. We review a no-evidence summary

judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426; *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Both direct and circumstantial evidence may be used to establish any material fact. *Ford Motor Co.*, 135 S.W.3d at 601. We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Duncan*, 464 S.W.3d at 14.

More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co.*, 135 S.W.3d at 601. Evidence does not exceed a scintilla if it is so weak as to do no more than to create a mere surmise or suspicion that the fact exists. *Id.* A plaintiff is not required to marshal her proof but only is required to present evidence that raises a genuine fact issue on the challenged elements. *Drew v. Harrison Cnty. Hosp. Ass'n*, 20 S.W.3d 244, 247 (Tex. App.—Texarkana 2000, no pet.) (patient who was injured when her arm was pinched in an elevator closing raised a fact issue on unreasonable danger and notice through her affidavit testimony that two women wearing hospital name badges told her this had happened before and deposition

testimony of the hospital's engineer that an incident like the patient's would pose an unreasonable risk of harm to the public.).

In reviewing a traditional summary judgment, we consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Duncan*, 464 S.W.3d at 13. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Duncan*, 464 S.W.3d at 13. A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *Duncan*, 464 S.W.3d at 13; *see* Tex. R. Civ. P. 166a(b), (c). Where a no-evidence motion for summary judgment and a traditional motion for summary judgment are filed that respectively assert that the plaintiff has no evidence of her claim and that the defendant has conclusively negated the same element of her claim, the existence of a fact issue defeating the no-evidence motion defeats the traditional motion as well. *See Arredondo v. Techserv Consulting & Training, Ltd.*, 567 S.W.3d 383, 400 (Tex. App.—San Antonio 2018), *aff'd in part and rev'd in part on other grounds*, 612 S.W.3d 289 (Tex. 2020).

Where a trial court's summary judgment order does not state the bases for the trial court's decision, we must affirm the order if any of the theories presented to the

11

trial court and preserved for appellate review are meritorious. *See Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## III. Analysis of No-Evidence Summary Judgment

### A. Negligent Activity

Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (plaintiff who fell on pipe thread protectors left lying on the ground involved a premises defect, not a negligent activity); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (plaintiff slipped on floor made slippery by plant spraying but since plaintiff was not injured by activity of spraying itself, but by condition resulting from spraying, there was no basis for a negligent activity claim). In this case, Harkins' contention was that she tripped because Wal-Mart created an unreasonably dangerous condition by using a mat that would roll up when her foot contacted it, causing her to fall. Like *Keetch* and *Williams*, this is a premises defect case, not a negligent activity case. *See Parrish v. SMG*, No. 01-16-00934-CV, 2017 WL 6043536, at *6 (Tex. App.— Houston [1st Dist.] Dec. 7, 2017, no pet.) (mem. op.). We overrule Harkins' first point of error as to this cause of action and affirm the trial court's take-nothing judgment as to liability based on negligent activity.

12

## B. Premises Liability

### 1.    Legal Principles

The elements of a premises liability claim involving an invitee injured on the owner/occupier's premises are (1) that the owner/occupier had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to the plaintiff; (3) that the owner/occupier did not exercise reasonable care to reduce or to eliminate the risk; and (4) that the owner's/occupier's failure to use such care proximately caused the plaintiff's personal injuries. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983)); *Keetch*, 845 S.W.3d at 264. The invitee may rely upon direct or circumstantial evidence to raise a fact issue on any of these elements. *Garcia v. Wal-Mart Stores, L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018).

Regarding the first element, an invitee may raise a fact issue on the notice element by presenting evidence establishing that (1) the defendant placed something on the floor, (2) the defendant actually knew that the material was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner/occupier a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). The fact that the owner/occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge. *Keetch*, 845 S.W.2d at 266; *Hall v. Sonic Drive-In of Angleton, Inc.*,

13

177 S.W.3d 636, 645 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Additionally, in assessing actual knowledge that a condition presents an unreasonable risk of harm, courts may consider whether the premises owner had received reports of the potential danger presented by the condition. *City of Beaumont v. Isern*, No. 09-19-00451-CV, 2020 WL 4680200, at *4 (Tex. App.—Beaumont Aug. 13, 2020, no pet.) (mem. op.).

The second element—whether the material on the floor created an unreasonable risk of harm to the invitee—is a bit more amorphous. Ordinarily, the extent to which a condition creates an unreasonable risk of harm is fact specific and is a question for the jury. *Duncan*, 464 S.W.3d at 18; *Christus Health Se. Tex. v. Wilson*, 305 S.W.3d 392, 397 (Tex. App.—Eastland 2010, no pet.). "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)). In other words, "whether a condition constitutes a danger is a function of reasonableness." *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex. 1975). If an ordinarily prudent person could foresee that harm was a likely result of a condition, then it is a danger. *Id.*; *Duncan*, 464 S.W.3d at 18. A dangerous condition is one that presents a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used. *Tex. Dep't of Transp. v. Padron*, 591 S.W.3d 684, 697 (Tex. App.—Texarkana 2019, pet. denied)

14

(citing *Knorpp v. Hale*, 981 S.W.2d 469, 474 (Tex. App.—Texarkana 1998, no pet.)). Foreseeability "does not require that the exact sequence of events that produced an injury be foreseeable." *Cnty. of Cameron*, 80 S.W.3d at 556; *Duncan*, 464 S.W.3d at 18. Instead, only the general damage must be foreseeable. *Id.*

The third element is that the owner/occupier did not exercise reasonable care to reduce or to eliminate the risk. The owner/occupier's duty is to either adequately warn of the dangerous condition or to make the condition reasonably safe. *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009). Negligence is commonly a question of fact unless the evidence establishes a complete absence of negligence as a matter of law. *Cnty. of Cameron*, 80 S.W.3d at 556.

The last element is that the owner's/occupier's failure to use such care proximately caused the invitee's injuries. The proximate cause element of a premises liability claim has two components: cause-in-fact and foreseeability. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006).

### 2. Application of Law to Facts

First, we must address Wal-Mart's preservation argument.[2] Did Harkins fail to address all grounds on which the no-evidence motion could have been granted? No.

---

[2]When, as here, a party moves for summary judgment on multiple grounds and the trial court's summary judgment order does not specify the ground(s) on which it is based, the appellant must negate all possible grounds on which the summary judgment could be based. *See Star-Telegram, Inc.*, 915 S.W.2d at 473; *Emmert v. Wilmington Sav. Fund Soc'y., FSB as Trustee for ARLP, Securitization Trust, Series 2015-1*, No. 02-00012-CV, 2021 WL 733301, at \*2 (Tex. App.—Fort Worth Feb. 25, 2021,

Wal-Mart's motion contended that there was no evidence of (1) an unreasonable risk of harm; (2) its knowledge of an unreasonably dangerous condition; (3) its breach of duty; and (4) proximate cause of injury (specifically, that "Plaintiff's *fall* was proximately caused by any action or inaction on the part of Defendants" [Emphasis added]). Wal-Mart did not contend that there was no evidence of injury or that Harkins' injury was caused by the fall.

Wal-Mart now contends on appeal that although Harkins raised a *Malooly* issue regarding the granting of the no-evidence motion, she did not challenge all of the grounds upon which the no-evidence motion could have been granted. Although not as clearly organized as Wal-Mart asserts is necessary, Harkins argues in her argument and authorities that Wal-Mart was aware that 1) it had customers who would drag their feet when they walked in the store; 2) customers who drag their feet while

pet. denied) (mem. op.); *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied). To do this, an appellant may challenge a summary judgment by raising a general assignment of error covering all possible summary-judgment grounds (a "*Malooly* issue") or specific assignments of error for each individual ground. *See Malooly Bros. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Rollins v. Denton Cnty.*, No. 02-14-00312-CV, 2015 WL 7817357, at *2 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.). But "[e]rror is not preserved as to every ground on which summary judgment could be based simply by raising a general issue; the appellant must also support the issue with argument and authorities challenging each ground." *Rollins*, 2015 WL 7817357, at *2. "When an argument is not made challenging every ground on which the summary judgment could be based, we are required to affirm the summary judgment, regardless of the merits of the unchallenged ground." *Id.* Wal-Mart contends that although Harkins raised a *Malooly* issue, she did not challenge each ground on which summary judgment could have been granted with argument and authorities. As will be addressed below, we disagree and overrule Wal-Mart's point in this regard.

16

walking can hit their toes on the mats, kicking up the mats; 3) mats that curl up create a fall risk for patrons; 4) the mats were not supposed to be put between the automatic doors because it could cause them to curl but Wal-Mart's greeter did just that about 20 minutes before Harkins' fall; 5) the mat did curl repeatedly for a period of time thereafter; and 6) the video, confirmed by Lori Bernard's testimony, showed that Harkins tripped when her left toe hit the edge of the mat near the point where the rolling had occurred with the doors, causing the mat to roll up and her to trip and fall. We overrule Wal-Mart's point that Harkins failed to address all grounds to the no-evidence portion of the summary judgment. *Plexchem Int'l Inc. v. Harris Appraisal Dist.*, 922 S.W.2d 930, 930–31 (Tex. 1996); *Game Sys., Inc. v. Forbes Hutton Leasing, Inc.*, No. 02-09-00051-CV, 2011 WL 2119672, at *4 n. 17 (Tex. App.—Fort Worth May 26, 2011, no pet.) (mem. op.); *Reynolds v. Murphy*, 188 S.W.3d 252, 257 n. 3 (Tex. App.—Fort Worth 2006, pet. denied).

Moving on to the merits of the appeal on the no-evidence summary judgment, we start by asking if there is more than a scintilla of evidence that an unreasonably dangerous condition existed? The answer is yes. Wal-Mart's characterization that the alleged unreasonably dangerous condition was the presence of the floor mat itself is a mischaracterization. The danger in question was the use of a mat that could lay flat but with the application of minimal force could roll up and cause a patron to trip and fall.

17

So, what is a dangerous condition that presents an unreasonable risk of harm? It is one which "creates a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *Knorpp*, 981 S.W.2d at 474 (citing Black's Law Dictionary 394 (6th ed. 1990)). A mat on a floor in an entryway to a store is obviously expected to be walked on by patrons as they enter and exit the store, as evidenced by the video. Was it reasonably foreseeable to Wal-Mart that some patrons would walk in a manner that their feet would drag? Was it reasonably foreseeable to Wal-Mart that patrons dragging their feet would hit their toes on the edge of the carpet and cause it to curl? Was it reasonably foreseeable to Wal-Mart that a mat that curls up can cause a patron to trip and fall? The answer to all three questions was in the affirmative according to Wal-Mart's managers' testimony. Since a dangerous condition is one which presents a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used, we hold that there was more than a scintilla of evidence that the mat in question posed an unreasonable risk of harm to patrons.

In the Motion for Rehearing, Walmart points to the recent Texas Supreme Court case of *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802, 804 (Tex. 2022), to demonstrate that the floor mat here was not an unreasonably dangerous condition as a matter of law. *McIntire* involved the question of whether a 0.75-inch divot in a parking lot failed to constitute an unreasonably dangerous condition as a matter of law. In holding that such a small pavement divot did not constitute an

18

unreasonably dangerous condition as a matter of law, the Court noted that "[i]n conducting this analysis, we have previously considered whether the relevant condition was clearly marked, its size, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring." *Id.* at 803.[3]

Using this analysis, we disagree with Wal-Mart that the mat in question was not unreasonably dangerous as a matter of law. As noted above, the danger was not the mat itself but the use of a mat with a propensity to curl up and trip customers in the ordinary course of walking. While the mat's presence was obvious, the risk was not, and neither the risk nor the mat was naturally occurring. Further, while there is no evidence that this condition had generated previous injuries or complaints, the purpose of that inquiry concerns the issue of knowledge or notice of an unreasonably dangerous condition by the premises-owner. Here, the risk of customers dragging their feet, kicking the mat which had a propensity to roll, and tripping was a risk

---

[3]The court also noted that "[t]iny surface defects in pavement are ubiquitous and naturally occurring." *Id.* (In the corresponding footnote 5, it noted that "[l]ike an 'accumulation of mud on a man-made surface,' which may occur 'without the assistance or involvement of unnatural contact,' Texas invitees will encounter small divots like the one at issue here regularly and accidents are 'bound to happen, regardless of the precautions taken by landowners.' *M.O. Dental Lab*, 139 S.W.3d at 676. Accordingly, invitees will generally be 'as aware as landowners of the existence of [such conditions]' and 'will often be in a better position to take immediate precautions against injury.'" *Id.* at 803 n.5.) Accordingly, the court held that reasonable invitees know that parking lots are not perfectly flat and even, and they use caution when exiting their vehicles.

admittedly recognized by Wal-Mart.[4] While there is no evidence whether the mat in question substantially differed from other mats, we hold that there is sufficient evidence to raise a fact issue on whether the mat in question created an unreasonable risk of danger.

Was there more than a scintilla of evidence that Wal-Mart had knowledge of the dangerous condition? Yes. An invitee may satisfy the notice element by establishing that (1) the defendant placed something on the floor, (2) the defendant actually knew that the material was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner/occupier a reasonable opportunity to discover it. *Reece*, 81 S.W.3d at 814. There is evidence demonstrating that Wal-Mart knew of the likelihood that patrons would drag their feet and that patrons who dragged their feet and contacted the mat would cause it to curl. Wal-Mart also knew that similar forces would cause these mats to curl up, i.e., that if placed between the automatic doors, the weather stripping on the bottom of the

---

[4]Wal-Mart cites to *Townson v. Wal-Mart Stores, Inc.*, 760 Fed. App'x 345, 346 (5th Cir. 2019) (not designated for publication) for the proposition that knowledge of a mat having been easily blown out of position on previous occasions is not knowledge of the risk of it being blown into a dangerous position on a subsequent occasion because the knowledge of the risk must pertain to the time of the incident in question. We are not persuaded by this rationale. First, except for United States Supreme Court decisions on questions of federal law, we are not bound by federal precedent. *Henry v. Smith*, 637 S.W.3d 226, 236 (Tex. App.—Fort Worth 2021, pet. denied). Second, Texas law recognizes that knowledge of the premises owner of unreasonable risks of harm prior to the incident in question can constitute evidence of knowledge of such risk in subsequent events. *Tex. Dep't of Transp. v. Padron*, 591 S.W.3d 684, 702–03 (Tex. App.—Texarkana 2019, pet. denied).

doors would catch the mat and curl it up. Wal-Mart also acknowledged that a curled-up mat was a fall risk for patrons. Despite this knowledge, Wal-Mart used the mat in question in the high traffic entry/exit. Further, Wal-Mart's greeter actually placed the mat between the automatic doors as seen on the video, which resulted in the mat curling up on numerous occasions.

The fact that the owner/occupier of a premises created a condition that posed an unreasonable risk of harm may support an inference of knowledge. *Keetch*, 845 S.W.2d at 266. Here, there is not only an inference of knowledge based on Wal-Mart's creation of the condition but also that its manager, Angela Brown, had actual knowledge of the risk, which she summarily dismissed in her testimony by saying, "People kick the corners up. That happens. I don't understand what you're trying to get at." Additionally, Ms. Bernard, another manager, in testifying that Harkins' shoe tip "interacted with the rubber edging of the mat" and caused the mat to flip up as she went forward, said "It's—it happens to any of us." The extent of the risk was demonstrated on the video in Harkins' fall and in the minimal effort of the gentleman who, just minutes after her fall, was able to flip the mat up with his foot after the greeter had laid it back flat. Harkins' contact did not just "kick the corner up" with minimal contact, it resulted in a significant portion of the mat flipping up and in her tripping and falling over it.

The third element is that the owner/occupier did not exercise reasonable care to reduce or eliminate the risk. The owner/occupier's duty is to either adequately

21

warn of the dangerous condition or to make the condition reasonably safe. Was there more than a scintilla of evidence that Wal-Mart failed to exercise reasonable care to reduce or eliminate the risk? Yes. In the record before us, it appears that the only signage in the area had to do with wet floors. Thus, there was evidence that Wal-Mart failed to warn patrons of the danger. What actions did Wal-Mart take to make the area safe? The only precaution Wal-Mart supposedly took was to instruct their greeters to constantly watch the mats and to not place the mats between the automatic doors or allow them to be there. However, just the opposite of that occurred here as demonstrated on the video for both sets of automatic doors as the mats were placed between the automatic doors and left there. Regardless, placing the mats outside of the paths of the automatic doors or having the greeters continuously watch the mats would not necessarily address the danger that Harkins identifies because she argues that the mats' propensity to curl even when flat when used by "foot dragging" patrons is the danger in question, and she produced some evidence to support this contention.

Finally, there is the element of proximate cause. Wal-Mart's no-evidence challenge was that there was no evidence that the condition proximately caused the fall. As previously discussed under foreseeability, there was evidence that it was reasonably foreseeable to Wal-Mart that this trip and fall, or something similar, would happen under the circumstances. Based on the video of the incident, there is evidence from which a jury might reasonably believe that Harkins was walking in a foot dragging manner that caused her toe to impact the edge of the mat and caused it to

22

curl up and Harkins to trip and fall. Thus, there was more than a scintilla of evidence regarding the element of proximate cause.

Having found more than a scintilla of evidence to support each element of Harkins' premises liability claim against Wal-Mart, we sustain Harkins' first point of error as to the no-evidence motion for summary judgment on premises liability.

## IV.    Analysis of Traditional Motion for Summary Judgment

Wal-Mart moved for traditional summary judgment on two grounds: 1) that it did not have notice "of the condition complained of in this matter," and 2) that the "condition" was not concealed from Harkins. The condition on which the traditional motion was directed was either the presence of the mat itself or whether the mat was rolled up. As previously noted, though, the dangerous condition purportedly creating the unreasonable danger was neither the mat itself nor a rolled-up condition of the mat, rather it was the propensity of the mat to roll and cause tripping when struck by a patron's foot in a reasonably foreseeable manner in the usual and expected use of the mat. There is evidence that this condition was not reasonably observable by Harkins or any other similarly situated patron but was known to Wal-Mart. In effect, Wal-Mart's traditional motion for summary judgment is the mirror image of its no-evidence motion for summary judgment. Therefore, the evidence that created fact issues in response to the no-evidence motion for summary judgment also creates fact issues precluding summary judgment on the traditional grounds. *Arredondo*, 567 S.W.3d at 400. We hold that the trial court erred in granting Wal-Mart's

traditional motion for summary judgment and sustain Harkins' second and third issues.

## V.    Conclusion

We overrule Harkins' first issue presented regarding her claim of liability against Wal-Mart for negligent activity and affirm the trial court's take-nothing no-evidence summary judgment on that claim. We sustain the remainder of Harkins' issues presented and reverse the remainder of the trial court's summary judgment and remand the case to the trial court for further proceedings.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  August 18, 2022